**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
─────────────────────────────────

**INTERSTATE FOODS, INC.,**

              Plaintiff,        06 Civ. 13469 (JGK)

     – against –               <u>OPINION AND ORDER</u>

**JEFFREY LEHMANN,**

              Defendant.
─────────────────────────────────

**JOHN G. KOELTL**, District Judge:

    The plaintiff, Interstate Foods, Inc. ("Interstate"), initially brought this action in New York State Supreme Court, New York County, seeking to hold the defendant Jeffrey Lehmann ("Lehmann") personally liable for debts incurred by Lehmann Meats, Inc. ("Lehmann Meats"). On October 25, 2006, Interstate filed an Amended Complaint in state court. Lehmann removed this case to federal district court on November 21, 2006. At a hearing held on December 20, 2007, this Court granted the plaintiff leave to amend the Complaint. Subsequently, on January 18, 2008, Interstate filed a Second Amended Complaint seeking damages in the amount of $60,564.94 for alleged fraud relating to the delivery of three dishonored checks, and damages of $284,488.71 based on a claim of "deepening insolvency." Lehmann now moves for summary judgment prior to discovery pursuant to Rule 56 of the Federal Rules of Civil Procedure.

1

I

The record submitted to the Court reflects the following facts. Interstate, a New York corporation with its principal place of business in New York, is in the business of supplying meat products to wholesalers. (Sec. Am. Com. ¶¶ 1, 6.) During the relevant period, Lehmann, a resident of New Jersey, was the president of Lehmann Meats, a wholesale seller and distributor of meat products with its principal place of business in New Jersey. (Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Deft.'s 56.1 Stmt.") ¶ 2; Plaintiff's Rule 56.1 Counterstatement of Material Facts ("Pl.'s 56.1 Stmt.") ¶ 2; Sec. Am. Compl. ¶¶ 2-4.) Interstate regularly supplied Lehmann Meats with meat products. (Sec. Am. Compl. ¶ 7.)

On or about August 24, 2006, three checks totaling $60,564.94 were drawn on the account of and on behalf of Lehmann Meats, signed "Jeffrey Lehmann, Pres.," and made payable to Interstate. (Deft.'s 56.1 Stmt. ¶¶ 4-6; Pl.'s 56.1 Stmt. ¶¶ 4-6.) All three checks were dishonored upon presentment due to insufficient funds. (Deft.'s 56.1 Stmt. ¶ 4; Pl.'s 56.1 Stmt. ¶ 4.) Subsequently, Lehmann Meats executed and delivered Deeds of Assignment for the Benefit of Creditors on September 8, 2006.[1] (Deft.'s 56.1 Stmt. ¶ 7; Pl.'s 56.1 Stmt. ¶ 7.) On April 19,

---

[1] New Jersey law provides for the transfer of a debtor's assets to an Assignee for the benefit of the debtor's creditors. The Assignee functions as the successor of the debtor and the representative of the debtor's creditors. See N.J. Stat. Ann. §§ 2A:19-1, -13, -14.

2

2007, the Assignee of Lehmann Meats entered into a Settlement Agreement with Lehmann, among others (collectively the "Lehmann Insiders"). (Lubetkin Decl. ¶ 4; Ex. A at Ex. I.) The Settlement Agreement was approved by an Order of the Superior Court of New Jersey, Bergen County, Chancery Division, Probate Part, dated June 15, 2007. (Lubetkin Decl. ¶ 7; Ex. B.) The plaintiff had notice of the submission of the Settlement Agreement to the Superior Court for approval, but did not file an objection. (Lubetkin Decl. ¶ 8.)

II

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to

3

issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

III

As a preliminary matter, it is necessary to determine the substantive law to be applied to the plaintiff's claims. In this diversity action, the Court applies the choice of law rules of New York, the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 582 (2d Cir. 2006). "Under New York choice-of-law rules, the first step of the analysis is to determine whether there is a substantive conflict between the laws of the relevant choices." Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, LLC, 446 F.Supp.2d 163, 191 (S.D.N.Y. 2006). "In the absence of substantive difference, however, a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." Inter'l Bus. Machines Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004). In this case, although the parties dispute whether the laws of New York or New Jersey should apply, neither party has asserted that the laws of New York and New Jersey are materially different with respect to a claim of fraud against a corporate officer nor made a substantive argument why either would be prejudiced by applying New York law to this claim. Therefore, the Court will apply New York law to the plaintiff's first claim. See, e.g.,

RLI Insurance Co. v. Conseco, Inc., No. 07 Civ. 2831, 2008 WL 4140620, at *4 (7th Cir. 2008) ("Because the parties do not raise a conflict of law issue and this case was filed in a federal court in Indiana, we apply Indiana law.").

Even if the parties had alleged a material conflict between the New York and New Jersey laws, and the Court accordingly applied the New York choice-of-law analysis, the Court would be compelled to apply New York law to the first cause of action. "Under New York's choice of law rules, where the plaintiff and defendant are domiciled in different states, the applicable law in an action where civil remedies are sought for tortious conduct is that of the situs of the injury." Locke v. Aston, 814 N.Y.S.2d 38, 42 (App. Div. 2006). In this case, the situs of the injury is New York, because that is where the plaintiff, a New York corporation, suffers the injury. New York is also the location of the critical fact giving rise to the dispute, because it is the state where the insufficiently funded checks were delivered. The plaintiff alleges in its motion papers that the checks were delivered in New York, and the defendant does not dispute that claim or suggest otherwise. (See Defendant's Memorandum in Support of His Second Motion for Summary Judgment 11 (alleging only that "the checks at issue were prepared in New Jersey").)

With respect to the plaintiff's second cause of action for "deepening insolvency," the plaintiff argues that New York law applies and the defendant argues that New Jersey law applies. However, neither New York nor New Jersey has recognized deepening insolvency as an independent cause of action. See Kittay v. Atlantic Bank of New York (In re Global Serv. Group LLC), 316 B.R. 451, 458 (Bankr. S.D.N.Y. 2004)(New York law); Bondi v. Citigroup, Inc., No. BER-L-10902-04, 2005 WL 975856, at *21 (N.J. Super. Ct. Law Div. Feb. 28, 2005)(New Jersey law). In this case, the plaintiff alleges a breach of fiduciary duty in its second cause of action, even though it is entitled "Deepening Insolvency." The second cause of action specifically alleges: "Lehmann thus breached his fiduciary obligations as an officer of an increasingly insolvent company." (Sec. Am. Compl. ¶ 28.) The parties have not submitted any evidence that there is actually a conflict of law between the law of New York and the law of New Jersey with respect to breach of fiduciary duty. Therefore, the Court will apply New York law to the plaintiff's second claim.

IV

Under New York law, an officer of a corporation may be held individually liable if such officer personally participates in or has actual knowledge of fraud or misrepresentation. See

7

Marine Midland Bank v. John E. Russo Produce Co., 405 N.E.2d 205 (N.Y. 1980); Polonetsky v. Better Homes Depot., Inc., 760 N.E.2d 1274, 1278 (N.Y. 2001). The elements of fraud are (i) a representation of material fact; (ii) falsity; (iii) scienter; (iv) reasonable reliance; and (v) injury. Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A., 247 F.Supp.2d 352, 364 (S.D.N.Y. 2002) (citing Manning v. Utilities Mut. Ins. Co., Inc., 254 F.3d 387, 400 (2d Cir. 2001)); see also Computerized Radiological Servs. v. Syntex Corp., 786 F.2d 72, 76 (2d Cir. 1986).

A representation of fact was made when the checks were issued to Interstate. See A. Sam & Sons Produce Co. v. Campese, 217 N.Y.S.2d 275, 277 (App. Div. 1961) ("[T]he act of drawing and delivering a check amounts to a representation that the drawer keeps an account with the drawee and that there are sufficient funds on deposit to meet it."). However, the parties dispute whether Lehmann personally issued or was responsible for the issuance of the checks. Interstate alleges that Lehmann was actively involved in the business of Lehmann Meats and that the dishonored checks were signed by Lehmann. (Pl.'s 56.1 Stmt. ¶ 10; Greenzeig Decl. ¶ 2.) Lehmann argues that he did not personally sign or prepare the checks in issue. (Deft.'s 56.1 Stmt. ¶ 10; Lehmann Decl. ¶ 2.) However, Lehmann has not asserted that he did not cause the checks to be issued.

8

Lehmann's actual involvement in the issuance of the checks is a disputed issue of material fact that cannot be resolved prior to discovery.

It is also disputed to what extent Lehmann knew that the checks would be dishonored. Lehmann argues that the financial position of Lehmann Meats changed unexpectedly in late August 2006 when the Glazier Group suddenly stopped making weekly payments to Lehmann Meats, and that as a result Lehmann was unable to borrow money to pay the debts of Lehmann Meats, including the amount owed to Interstate. (Lehmann Decl. ¶¶ 6, 8.) However, the Court could not decide what Lehmann knew prior to discovery.

Finally, the parties dispute whether Interstate's delivery of additional meat products to Lehmann Meats was made in reliance on the dishonored checks. Interstate asserts that Lehmann Meats had reached its credit limit with Interstate and that Interstate delivered significant quantities of additional meat products as a result of the issuance of the checks. (Pl.'s 56.1 Stmt. ¶ 11; Greenzeig Decl. ¶ 2.) Lehmann argues that Lehmann Meats had not exhausted its credit line, that the companies were simply following their normal course of business, and that Interstate did not deliver additional meat in reliance on the checks issued by Lehmann Meats. (Deft.'s 56.1 Stmt. ¶ 11.)

Interstate has not yet had the opportunity to test its fraud claim through discovery.  "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  Hellstrom v. United States Dept. of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000).  All of the facts which Interstate alleges "upon information and belief" are facts which, prior to discovery, are "peculiarly within the adverse parties' knowledge."  Stromfeld v. The Great Atl. & Pac. Tea Co., Inc., 484 F.Supp. 1264, 1270 (S.D.N.Y. 1980)(citing Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972)).

Because the defendant has not demonstrated the absence of genuine issues of material fact with respect to the first cause of action for fraud, summary judgment as to this claim is **denied**.

V

Interstate's second cause of action, a claim of "deepening insolvency," is essentially an allegation that Lehmann, as a corporate officer, extended the life of Lehmann Meats beyond insolvency, "resulting in damage to the corporation caused by increased debt."  Kittay, 316 B.R. at 456 (internal citation and quotation marks omitted).  The substance of Interstate's claim is that Lehmann Meats was in a zone of insolvency, and that

10

Lehmann assumed fiduciary duties to the creditors of Lehmann Meats. Despite those fiduciary duties, the Second Amended Complaint alleges that Lehmann diverted funds from Lehmann Meats and "Lehmann thus breached his fiduciary obligations, as an officer of an increasingly insolvent company, to the company's creditors." (Sec. Am. Compl. ¶ 28.)

As noted above, New York has not recognized deepening insolvency as an independent cause of action. See Kittay, 316 B.R. at 458 ("No reported New York case . . . has ruled that 'deepening insolvency' is an independent tort."). Deepening insolvency has been rejected as an independent cause of action by many courts, including courts in the Second Circuit, on the grounds that it is indistinguishable from claims of fraud or breach of fiduciary duty. See, e.g., Bondi v. Bank of America Corp. (In re Parmalat Secs. Litig.), 383 F.Supp.2d 587, 601-02 (S.D.N.Y. 2005)("If officers and directors can be shown to have breached their fiduciary duties by deepening a corporation's insolvency . . . that injury is compensable on a claim for breach of fiduciary duty."); Official Comm. of Unsecured Creditors of Vartec Telecom, Inc. v. Rural Tel. Fin. Coop. (In re VarTec Telecom, Inc.), 335 B.R. 631, 644 (Bankr. N.D. Tex. 2005) (rejecting deepening insolvency as independent tort because it substantially duplicated established torts); Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp.), 333

11

B.R. 506, 517 (Bankr. D.D.C. 2005) (declining to recognize new cause of action because "established ones cover the same ground"); Trenwick America Litig. Trust v. Ernst & Young, LLP, 906 A.2d 168, 174 (Del. Ch. 2006) ("Existing equitable causes of action for breach of fiduciary duty, and existing legal causes of action for fraud, fraudulent conveyance, and breach of contract are the appropriate means by which to challenge the actions of boards of insolvent corporations.").

Therefore, to maintain its second cause of action, Interstate must show, as it alleges, that Lehmann breached a fiduciary obligation to the creditors of Lehmann Meats. While the second cause of action is entitled "Deepening Insolvency," the gist of the claim is in fact breach of fiduciary duties to the creditors of Lehmann Meats at a time when Lehmann Meats was in a "zone of insolvency." (Sec. Am. Compl. ¶¶ 24-28.) The Second Amended Complaint alleges that Lehmann diverted corporate funds to his own personal use while Lehmann Meats was in the "zone of insolvency." Because Interstate functioned as a creditor to Lehmann Meats, Lehmann Meats owed Interstate a fiduciary duty if it became insolvent, as Interstate alleges that it did. See In re STN Enterprises, 779 F.2d 901, 904 (2d Cir. 1985) ("although in most states directors of a solvent corporation do not owe a fiduciary duty to creditors, quite the reverse is true when the corporation becomes insolvent") (citing

New Jersey authority); Hallinan v. Republic Bank & Trust Co., 519 F.Supp.2d 340, 349 (S.D.N.Y. 2007) (quoting In re Adelphia Communs. Corp., 323 B.R. 345, 386 n.140 (Bankr. S.D.N.Y. 2005) ("when a corporation becomes insolvent or enters into the zone of insolvency, the fiduciary duties of a corporation expand from its stockholders to its creditors"); UBS Real Estate Securities, Inc. v. Fairmont Funding Ltd., 862 N.Y.S.2d 818 (Sup. Ct. 2008) ("Under the trust fund doctrine, officers and directors of an insolvent corporation are said to hold the remaining corporate assets in trust for the benefit of its general creditors."). Therefore, Interstate has pleaded that Lehmann breached his fiduciary duties to the creditors of Lehmann Meats, including Interstate, by diverting corporate funds and thereby harming the creditors while Lehmann Meats was insolvent.

However, even if properly pleaded, such a claim is precluded by the waiver provision of the Settlement Agreement, which has been approved in an Order of the Superior Court of New Jersey, Bergen County, Chancery Division, Probate Part, dated June 15, 2007. The "Whereas" clause of the Settlement Agreement specifically recites that the Assignee for the benefit of creditors believes that there are claims in favor of Lehmann Meats against the Lehmann interests including claims for alleged fraudulent transfers and other claims. The waiver provision states that "[a]ll claims which the assigned estate may have

against the Lehmann Insiders shall be deemed waived, discharged, barred, and released." (Lubetkin Decl. Ex. A at Ex. I.) The plaintiff's claim against Lehmann seeking damages for "deepening insolvency" is a claim brought by a creditor of Lehmann Meats based on a theory that Lehmann breached his fiduciary obligations, as an officer of an increasingly insolvent company, "to the company's creditors." (Sec. Am. Compl. ¶ 28.) This is precisely a claim waived by the Settlement Agreement.[2] The

---

[2] The plaintiff argues that the Settlement Agreement did not waive the plaintiff's "deepening insolvency" claim against the defendant, because the Assignee lacked standing to bring this claim, and therefore could not waive it. However, the plaintiff fails to point to any New Jersey case law to support this proposition. It would make no sense to conclude that the plaintiff was not bound by the Order approving the Settlement Agreement. The Assignee proposed to settle claims against Lehmann. The plaintiff did not object to that settlement and the plaintiff's claim is the same as those of all the other creditors of Lehmann Meats, in that it depends on a theory that Lehmann depleted the assets of Lehmann Meats. Moreover, the plaintiff's use of New York case law to support the proposition that the Assignee lacked standing is misguided. First, New York law does not govern the terms of the Settlement Agreement, which was executed in New Jersey and approved by a New Jersey court. Second, the line of cases that the plaintiff cites stemming from Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir. 1991), simply do not apply in this case. In Wagoner, the Court of Appeals for the Second Circuit explained that a Trustee in bankruptcy stood in the stead of the debtor and could only assert claims that the debtor could have brought under state law, and not claims that belonged to the individual creditors. The Court of Appeals then looked to New York law to determine if the debtor could have brought the claim at issue. The Court of Appeals then decided that under New York law, a claim against a third party for defrauding the corporation with the cooperation of management accrues to creditors, not to the guilty corporation. Wagoner, 944 F.2d at 120. The rationale underlying the Wagoner rule "derives from the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation." Wight v. Bankamerica Corporation, 219 F.3d 79, 86 (2d Cir. 2000). Because management's misconduct is imputed to the corporation, and because the Trustee stands in the shoes of the corporation, the Wagoner rule bars a Trustee from suing to recover for a wrong that he himself essentially took part in. Id. at 87. The rule is itself subject to an adverse interest exception whereby management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation. Id. at 87. Plainly, an allegation that a corporate officer diverted corporate funds to his own personal use is a claim that belongs to the corporation itself and would also

14

Settlement Agreement is controlling because this Court is bound to respect the Order of the New Jersey court approving the Settlement Agreement. "The Full Faith and Credit Act requires that the 'judicial proceedings' of any State 'shall have the same full faith and credit in any court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 373 (1996) (quoting 28 U.S.C. § 1738). New Jersey courts would give the Order full faith and credit. See, e.g., Smith v. Squibb Corp., 603 A.2d 75, 77 (N.J. Super. Ct. App. Div. 1992) (doctrine of res judicata "precluded" New Jersey Superior Court from entering an Order in a case contrary to an Order it had already given). Therefore, this Court must give the Order full faith and credit.[3]

In sum, Interstate cannot proceed under a theory of "deepening insolvency" because it is not a valid independent cause of action under either New York or New Jersey law, and any

---

be subject to the adverse interest exception. Hence, in this case, the Wagoner rule on which the plaintiff relies would not deprive the Assignee of standing to have brought the claim against Lehmann and the Order approving the settlement cannot be attacked for lack of standing to have settled the claim.

[3] The Court does not address at this juncture, before discovery, whether the Settlement Agreement also released the plaintiff's fraud claim against the defendant. The defendant may raise this issue after discovery in another Motion for Summary Judgment. It should be noted, however, that the fraud claim differs from the claim of breach of fiduciary duty to creditors. The fraud claim is a claim that Lehmann defrauded Interstate in a way that is personal and different from the claim that Interstate was damaged, just as all other creditors, when Lehmann allegedly diverted funds from Lehmann Meats.

potential independent cause of action using "deepening insolvency" as a theory of damages is precluded by the state court's approval of the Settlement Agreement. Therefore, Lehmann's motion for summary judgment with respect to the second cause of action for deepening insolvency is **granted**.

CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed the remaining arguments are either moot or without merit. For the reasons discussed above, the defendant's motion is **granted in part** and **denied in part**.

**SO ORDERED.**

Dated: **New York, New York**
**September 25, 2008**

_____
John G. Koeltl
United States District Judge